# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM DRAKE, | Case No. 1:22-cv-01149-BAM (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION |
| v. | |
| IBAL, *et al.*, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS |
| Defendants. | |
| | (ECF No. 10) |
| | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Sam Drake ("Plaintiff") is a pretrial detainee proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. The Court screened Plaintiff's complaint, and he was granted leave to amend. Plaintiff's first amended complaint, filed December 13, 2022, is currently before the Court for screening. (ECF No. 10.)

**I.     Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at Fresno County Jail. The events in the complaint are alleged to have occurred while Plaintiff was housed as a pretrial detainee in Fresno County Jail ("FJC"). Plaintiff names as defendants: (1) Keoniyom, Correctional Officer, (2) Margaret Mims, outgoing Sheriff, (3) Steve McComas, Assistant Sheriff, (4) Enriquez, Correctional Officer, (5) S. Nichols, Mailroom Sergeant.  All defendant are sued in their individual capacities.

Plaintiff alleges a violation of substantive Due Process and First Amendment involving an unconstitutional policy authorizing the deprivation of mail, FCJ Policy E-120.[1] Plaintiff alleges that Defendants Mims, McComas, Keoniyom, Enriquez and Nichols deprived Plaintiff of his right not to be punished, from March 2019 through March 4, 2021 (first time period) and from March 28, 2022 through November 30, 2022 (second time period).  Plaintiff alleges that the "continuing violation doctrine" applies for the entire time he has been detained at FCJ.  The FCJ

---

[1] Plaintiff also claims a violation by FCJ Policy #E-410, contained in the Inmate Orientation Handbook, which is the mirror image of FCJ Policy #E-120. (Doc. 10, Exh. 2, p.17-18.)  As the mirror image of FCJ Policy #E-120, any cognizable claim will apply equally to #E-410.

Policy #E-120, last revised in 2021, restricts possession of non-nude publications where no sexual activity is depicted, solely based on clothing or pose displayed and directs or authorizes staff to disallow Plaintiff's access to this material. (See Doc. 10, Exh. 1.) Plaintiff alleges that FCJ Policy #E-120 is punitive in that it forces Plaintiff to suffer removal of mail rights he would have in prison or in a State hospital.

Defendant Mims was the policy maker and has final authority to establish all FCJ policies and established FCJ policy #E-120, adding posing, clothing and nonfrontal nudity and partial nudity restrictions which enlarges the Title 15 CCR §3006(c)(17) frontal nudity ban. Defendant McComas was responsible for implementing the policy and procedures. Defendant Nichols was responsible for the FCJ mailroom and is responsible for training and supervision of all employees of the mailroom. Plaintiff alleges that "at all times relevant to this matter Dfnts Mims, McComas and Nichols had a routine practice of depriving detainees of the right to not be punished by removing all constitutional/statutory safeguards against arbitrary deprivation of rights." Plaintiff had a statutory right (PC §2601) to buy and possess non-nude publications under the First Amendment.

Plaintiff alleges that FCJ Policy #E-120's restriction on purchase and possession of non-nude/side-rear nude publications is excessive in relation to FCJ management and security and does not pose any threat. Defendant Mims made the FCJ Policy #E-120 more restrictive with the intent to oppress and harm Plaintiff and is more restrictive than PC §§ 311, 2600, 2601.

Plaintiff filed a grievance in 2019-2020 noting that the provision was modified to incorporate the language of 15 CCR §3006(c). Mims did not change the overly broad, vague, restrictive provision in FCJ Policy #E-120. Depriving Plaintiff of mail violated Due Process. Mims has no authority to implement policies which conflict, supersede or reduce state regulation. Plaintiff alleges that Mims, McComas, Nichols can only deprive Plaintiff of publications what fail the obscenity test otherwise with §3006(e).

While at FCJ, Plaintiff has only ordered non-nude noncontraband photos or magazines from the same vendor he ordered from while in state custody 1999-2018 and which were permitted in state custody. FCJ Policy #E-120 contains provisions which are overly restrictive or

3

excessive and overly broad language.  (FAC ¶27, 28.) Plaintiff describes the various photos, which are attached as exhibits, which fall within the FCJ Policy #E-120, but which should not fall with the policy. Plaintiff alleges that as a "matter of law" the photos he orders are not obscene or sexually explicit and not contraband.

Plaintiff alleges that 15 CCR §3006(c) is sufficient to meet the FCJ facility management, safety and security needs. FCJ Policy #E-120 exaggerated the safety, security and facility management needs (at §x, c) to deny possession of sexy photographs.

FCJ Policy #E-120 contains a notice provision which does not give sufficient notice of the full contents of the mail parcel being disallowed and permits staff to withhold the full content. Mims, McComas, and Nichols were aware of the inadequate notice and refused to correct it.

FCJ Policy #E-120 contains a "Blanket disposal" provision that disallows entire content of mail and is more restrictive than prison mail procedures and is a deterrent restriction that is intended to frustrate/annoy family, friends and acquaintances.

In 2021, Defendant Mims revised FCJ policy #E-120 because detainees were filing mail related grievances from 2018-21. Prior to the change, the practice by mailroom staff under Nichols' leadership was to deprive detainees of non-nude magazines and photos on their own value judgment and issue false or incomplete notices and tell detainees to stop ordering the publications.

FCJ Policy #E-120 "Sexy Content Ban" provisions, including policy #E-410's mirroring provisions (Exh. 1 p. 14 and p. 20-21), deprived Plaintiff of his rights not to be punished. FCJ Policy #E-120 disallows all sexy non-nude magazines featuring adult female models wearing bikinis, lingerie, etc, despite the content not being obscene or sexually explicit within the meaning of 15 CCR 3006(C). (See Exh.. 5.)  FCJ treats all non-nude sexy publications as pornography.

Plaintiff requires pictorial images to rechannel and release sexual energy in a healthy way because he cannot have one-on-one interaction with the opposite sex. Plaintiff does not purchase pornography and purchases only non-nude or partially nude publications that are permitted.

Plaintiff alleges that direct negative consequences of the FCJ Policy #E-120 established by Mims, McComas, Nichols, Keoniyom and Enriquez is increased incidents of theft of photos

and magazines, increased physical and verbal altercations and sexual abuse, and other similar conduct. Mims, McComas, Nichols, Keoniyom and Enriquez received reports of detainee conflicts, disruptive acts, threats of violent related to mail issues and they drew an inference that the traditional method of enforcing the FCJ Policy #E-120 posed a substantial risk of harm to Plaintiff's mental health.

From March 28, 2022 through the current date, Defendant McComas failed to supervise and train Nichols, Keoniyom and Enriquez to ensure Plaintiff received his state regulation authorized photos, magazines, catalogs from Acme Publications and Inmate Services Company. Defendant McComas intended to inflict emotional distress upon Plaintiff by not directing Defendants Nichols, Enrique and Keoniyom to stop enforcing the FCJ Policy #E-120.

Plaintiff arrived at FCJ on January 21, 2022 as a pretrial detainee.  Defendants Mims, McComas, Nichols, Keoniyom and Enriquez denied Plaintiff all normal detainee privileges from 2018 throughout 2022. On February 9, 2022, Acme Publications, which specializes in high quality nude and non-nude celebrity and model photographs sent Plaintiff an order form and offer to place a custom order.  Plaintiff ordered 6 custom celebrity sexy photos and sent his order form to his family.

On March 28-30, 2022, Defendant Enriquez applied the FCJ Policy #E-120 and logged the package for Plaintiff as "sexually suggestive photographs" and immediately returned to sender the entire package.  Enriquez inflicted mental trauma on Plaintiff each time she disallowed Plaintiff's possession of publications on February 27, 2022, March 8, 2022, May 11, 2022, and March 28-30, 2022.  Defendants Enriquez, Nichols, Keoniyom knew that Plaintiff was housed in Ad-seg without any privileges and needed mail to prevent mental suffering.

Defendant Keoniyom applied the FCJ Policy #E-120 on April 19, 26 and 28, 2022 to Plaintiff's order from "Inmate Services Company" of non-nude photographs as "sexually explicit" and returned the photographs to the sender.

Acme modified plaintiff's custom order after the rejection and reshipped the 3 catalog photos and full catalog on April 15, 2022.

Defendant Keoniyom punished Plaintiff on April 26-28, 2022 under the FCJ Policy #E-

120 by applying the policy to the same non-nude catalog that had been rejected by Defendant Enriquez.  Defendant Keoniyom logged the material as sexually explicit photos and returned to sender the entire mailing. None of the photos were sexually explicit or obscene.

The legislature has not given FCJ defendants authority to define obscene or sexually explicit material more broadly that Penal Code 311 and 15 CCR 3006(e). Section 3006(e) authorizes exclusion of only patently offensive material whereas sexual expression that is indecent but not obscene is protected. The sexy-provocative poses and clothing displaying in the subject photos are not obscene or pornographic.

Nichols applied the FCJ Policy #E-120 in December 2019, March 8, 2020, May 11, 2020 and March 30, 2022.  Keoniyom enforced the FCJ Policy #E-120, which Nichols permitted, against Plaintiff on April 19, 28, 2022. Defendant Nichols removed evidence from Plaintiff's grievance packet during the May 4-5, 2022 investigation of the April 26-28, 2022 Keoniyom deprivation of mail.

Plaintiff suffered mental trauma and oppression when Defendants Keoniyom, Mims, McComas, Enriquez and Nichols subjected him to conditions worse than prison and has suffered, anxiety, loneliness, frustration, anguish, stigma and loss of money from their implementation and enforcement of the FCJ Policy #E-120.

Plaintiff seeks monetary damages.

**III.    Discussion**

**A.  Request for Judicial Notice**

Plaintiff requests the Court to take judicial notice of FCJ Policy #E-120, attached as Exh. 1, FCJ policy #E-410 attached as Exh. 2, Acme Publications non-nude photo catalog page attached as Exh. 3, Prison contraband rules §§3006 and 3135 attached as Exh. 4 and Sexy non-nude magazine sample covers attached as Exh. 5.

Rule 201(b) of the Federal Rules of Evidence provides that a court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonable be questioned. Fed. R. Evid. 201(b). Here, FCJ Policy #E-120, FCJ

Policy #E-410, and 15 CCR §§3006, 3135 are the type of facts the Court may take judicial notice. The other information or facts Plaintiff seeks this Court to take judicial notice of cannot be judicially noticed. *See e.g.*, *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) (a court cannot generally take judicial notice of the underlying "factual findings of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it").

### B.     Supervisory Liability

To the extent Plaintiff seeks to hold any defendant liable based solely upon their supervisory role, he may not do so.  Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior.  *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); *accord Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc).  "

Plaintiff alleges that Defendant McComas should have trained personnel differently or better. A "failure to train" theory can be the basis for a supervisor's liability under § 1983 in only limited circumstances, such as where the failure amounts to deliberate indifference. *See City of Canton v. Harris*, 489 U.S. 378, 387–90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). To establish a failure to train claim, a plaintiff must show that "'in light of the duties assigned to specific officers or employees, the need for more or different training [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers ... can reasonably be said to have been deliberately indifferent to the need.'" *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting Canton, 489 U.S. at 390, 109 S.Ct. 1197). Plaintiff has not alleged facts demonstrating that Defendant was deliberately indifferent to a need for more or different training.

Plaintiff's factual allegations regarding lack of training are limited to a conclusory statement that the defendant failed to train the other defendants.

### C. First Amendment – Challenge to Jail Mail Policy

Prisoners have "'a First Amendment right to send and receive mail,' but prison regulations may curtail that right if the 'regulations are reasonably related to legitimate penological interests.'" *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017) (quoting *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam)). However, a temporary delay or isolated incident of delay or other mail interference without evidence of improper motive does not violate a prisoner's First Amendment rights. *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (as amended); *see Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *Watkins v. Curry*, 2011 WL 5079532, at *4 (N.D. Cal. Oct. 25, 2011) (finding that an isolated incident of mail mishandling, without evidence that the delay was based on the content of the letter or that the one-year delay was purposeful, fails to show First Amendment violation); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners.").

When considering prison regulations on incoming publications, "[s]ome content regulation is permissible in the prison context." *McCabe v. Arave*, 827 F.2d 634, 638 (9th Cir. 1987); *see Beard v. Banks*, 548 U.S. 521, 531-32 (2006) (analyzing prison inmate's challenge to a state Department of Corrections policy restricting access to newspapers, magazines, and photographs under the *Turner* factors). Prison officials do not need to show that there is no less restrictive mail policy that could serve the same penological interests. *See Thornburgh v. Abbott*, 490 U.S. 401, 412 (1989). This right is subject to "substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security." *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir.1990) (citations omitted). Courts owe "substantial deference to the professional judgment of prison administrators." *Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003). In order for the policy to

be upheld, it must be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. at 89, 107 S.Ct. 2254. In *Turner*, the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89.

> There are four factors relevant to the *Turner* reasonableness inquiry: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

Plaintiff challenges FCJ Policy #E-120.[2] (Doc. 10, Exh. 1).  In relevant part, the policy states the following regarding sexually explicit or obscene material (Doc. 10, Exh. 1, p. 41):

> "C. Nude or sexually suggestive photographs (individual prints or copies, as opposed to those from publications) present special concerns about personal safety, security, and good order, particularly when the subject is an inmate's relative, friend, or acquaintance or could reasonable be perceived as such.  For these reasons, an inmate may not be permitted to retain, receive, or possess a personal photograph in which the subject is partially nude or naked, overtly sexual or sexually suggestive.  Persons must be clothed in a manner that would be generally accepted in the community as a whole.  Any intent to show nudity, including, but not limited to the following, will be returned as unacceptable:
>
> 1. Any photograph that displays an exposed female breast.  This includes photos that have been altered to obscure or conceal the areola (e.g., strategically places stickers, digitally altered, etc.) Undergarments must be work beneath clothing that is sheer/translucent, lace, mesh, etc.
> 2. Any photo that displays the genitalia, pubic area, or anus of either gender (including those waring clothing that by design or by manner in which it is worn, allows the anatomical detail of genitalia to be clearly viewed).
> 3. Any nude photographs of infants or children.

(ECF No. 10, p.40.) The purpose of this policy is stated as:

> "In order to prevent a discriminatory and hostile work environment and reduce sexual harassment for inmates, staff, and volunteers, inmates are not permitted to

---

[2] See footnote 1.

> send, receive, possess, or have under their control obscene material and/or mail containing information concerning where, how, or from whom obscene material may be obtained."

Id. at p. 41.

Plaintiff alleges that the material seized was non-nude photos depicted in publications. Plaintiff argues the FCJ Policy #E-120 applies to common depictions of ordinary and lawful activities, and that these depictions constitute photographs and catalogs subject to the policy.

        1.      <u>Facial Challenge</u>

A constitutional challenge to a policy is "'facial' [if] it is not limited to plaintiff['s] particular case, but challenges application of the law more broadly. . . ." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (facial challenges "reach beyond the particular circumstances of these plaintiffs.")  Facial challenges are disfavored.  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).  "A facial challenge to a [policy] is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [policy] would be valid.  The fact that the [policy] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid[.]"  *United States v. Salerno*, 481 U.S. 739, 745 (1987).

In the First Amendment context, however, the Court has "recognize[d] 'a second type of facial challenge,' whereby a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to [its] plainly legitimate sweep.' " *United States v. Stevens,* 559 U.S. 460, 473, 130 S.Ct. 1577 (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008)). When a plaintiff presents such a facial challenge to a prison regulation, Courts evaluate it using the *Turner* framework, just as it would if the challenge were to a specific application of the regulation. *Bahrampour v. Lampert*, 356 F.3d 975 (9th Cir.2004) (upholding refusal to deliver depictions of actual or simulated sexual acts).

Before the Court can apply the *Turner* factors, it must construe the challenged policy. See *United States v. Williams*, 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) ("[I]t is impossible to determine whether a statute reaches too far without first knowing what the statute

covers.") (*citing United States v. Williams*, 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008)).

The Court's interpretation of FCJ Policy #E-120 should be informed by the parties' arguments regarding the terminology in the policy. *See Prison Legal News v. Ryan*, 39 F.4th 1121, 1130-32 (9th Cir. 2022) (evaluating each parties arguments regarding the meaning of the challenged language). In addition, at screening, the Court should not unilaterally apply the *Turner* factors. For instance, the Court cannot determine, at this point, whether the policy is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Plaintiff alleges that the safety and security concerns were a mere pretext. *See Prison Legal News v. Ryan*, 39 F.4th 1121, 1133 (9th Cir. 2022) (finding that provision prohibiting publications in an Arizona jail facility "that may, could reasonably be anticipated to, could reasonably result in, is or appears to be intended to cause or encourage sexual excitement or arousal or hostile behaviors, or that depicts sexually suggestive settings, poses or attire" was not rationally related to prohibiting the threat to "prison interests"). As the Court cannot interpret FCJ Policy #E-120 or apply the Turner factors, the Court finds that Plaintiff states a cognizable claim for violation of the First Amendment for FCJ Policy #E-120 against Defendant Mims and McComas.

2.  <u>As-Applied Challenge</u>

" '[A] [policy] ... may be held constitutionally invalid as applied when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question.' " *Little v. Streater*, 452 U.S. 1, 16 (1981) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). Thus, to support an "as applied" challenge, Plaintiff must show that his individual circumstances make the general application of the FCJ Policy #E-120 policy unconstitutional. *See Doe v. United States*, 419 F.3d 1058, 1063 (9th Cir. 2005). As-applied challenges are also subject to the *Turner* framework. *Prison Legal News v. Ryan*, 39 F.4th at 1135.

Accepting Plaintiff's factual allegations as true, liberally construing the allegations, and also drawing all inferences therefrom in Plaintiff's favor, as the Court must at this stage, Plaintiff states a cognizable claim that the confiscation of his magazines, catalogs, and photographs,

violated the First Amendment. At the screening stage, the Court cannot ascertain the balancing required for the *Turner* factors.. Here, jail officials allegedly returned/banned entire issues of magazines and catalogs because they contained photographs of non-nude people in bikinis and in "suggestive" poses. If true, such a ban could extend to virtually any magazine or newspaper simply because of a single advertisement for swim wear, for example. Plaintiff states a cognizable as-applied claim against Defendant Enriquez, Nichols and Keoniyom.

### D. Due Process - Failure to Provide Notice

A prisoner also has a Fourteenth Amendment due process liberty interest in receiving notice that his incoming mail has been withheld by prison authorities. *Frost v. Symington*, 197 F.3d 348, 353 (9th Cir. 1999). Nevertheless, prisons may regulate the processing of inmate mail so long as those regulations further an important or substantial government interest other than the suppression of expression. *See Procunier v. Martinez*, 416 U.S. 396, 411-12 (1974), overruled on other grounds, *Thornburgh v. Abbott*, 490 U.S. 401, 412-414 (1989); *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002) (jail personnel may regulate speech if a restriction is reasonably related to legitimate penological interests and an inmate is not deprived of all means of expression, citing *Turner v. Safley*, 482 U.S. 78, 92 (1986)). Thus, prisons may regulate the processing of inmate mail so long as those regulations further an important or substantial government interest other than the suppression of expression. *See Procunier*, 416 U.S. at 411-12, 413-14. "Prevention of criminal activity and the maintenance of prison security are legitimate penological interests which justify the regulation of both incoming and outgoing prisoner mail."

In *Procunier*, the Supreme Court held "that the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." 416 U.S. at 417-18. Specifically, an inmate "has a Fourteenth Amendment due process liberty interest in receiving notice that his incoming mail is being withheld by prison authorities.*" Frost v. Symington*, 197 F.3d 348, 353-54 (9th Cir. 1999). This liberty interest is protected from "arbitrary government invasion," and any decision to censor or withhold delivery of mail must be accompanied by "minimum procedural safeguards." *Sikorski v. Whorton*, 631 F. Supp. 2d 1327, 1341 (D. Nev. 2009) (quoting *Procunier*, 416 U.S. at 417-18.) The "minimum procedural safeguards" are: (1)

notifying the inmate that the mail was seized; (2) allowing the inmate a reasonable opportunity to protest the decision; and (3) referring any complaints to a prison official other than the one who seized the mail. *Procunier*, 416 U.S. at 418-19; Krug v. Lutz, 329 F.3d 692, 697-08 (9th Cir. 2003) ("Following *Thornburgh*, this circuit has repeatedly acknowledged that withholding delivery of inmate mail must be accompanied by the minimum procedural safeguards established in [*Procuni*er].").

Plaintiff alleges he was not provided notice that his photographs, catalogs and magazines were returned to the sender before they were returned. Liberally construing the allegations, Plaintiff states a cognizable claim for violation of due process against officers who returned mail, Enriquez, Keoniyom and Nichols.

### E.     Failure to Investigate

Plaintiff alleges Defendant Nichols removed evidence from Plaintiff's grievance packet during the May 4-5, 2022 investigation.

To the extent Plaintiff alleges that there was an inadequate investigation, Plaintiff's claims are not a basis for a plausible § 1983 claim. *Baker v. Beam*, 2019 WL 1455321, at *6 (E.D. Cal. 2019). To the degree Plaintiff is trying to hold the individuals or others liable for an independent, unspecified constitutional violation based upon an allegedly inadequate investigation, there is no such claim. *See Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); *Page v. Stanley*, 2013 WL 2456798, at *8–9 (C.D. Cal. June 5, 2013) (dismissing Section 1983 claim alleging that officers failed to conduct thorough investigation of plaintiff's complaints because plaintiff "had no constitutional right to any investigation of his citizen's complaint, much less a 'thorough' investigation or a particular outcome"); *Tirado v. Santiago*, No. 1:22-CV-00724 BAM PC, 2022 WL 4586294, at *5 (E.D. Cal. Sept. 29, 2022), report and recommendation adopted, No. 1:22-CV-00724 JLT BAM PC, 2022 WL 16748838 (E.D. Cal. Nov. 7, 2022) (no constitutional claim for failing to investigate an appeal).

///

**F.     State Law Claims**

To the extent Plaintiff also alleges violations of California law, Plaintiff is informed that the California Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. *State v. Superior Court of Kings County (Bodde),* 32 Cal.4th 1234, 1239 (Cal. 2004); *Shirk v. Vista Unified School District*, 42 Cal.4th 201, 209 (2007). To state a tort claim against a public employee, a plaintiff must allege compliance with the California Tort Claims Act. Cal. Gov't Code § 950.6; *Bodde*, 32 Cal.4th at 1244. "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subjects a compliant to general demurrer for failure to state a cause of action." Bodde, 32 Cal.4th at 1239.

As Plaintiff has not alleged compliance with the Government Claims Act, he has failed to state a claim under California law.

**IV.     Conclusion and Recommendation**

Based on the above, the Court finds that Plaintiff's first amended complaint, filed December 13, 2022 (ECF No. 10), states a cognizable claim for: (1) violation of the First Amendment based on a facial challenge to FCJ Policy #E-120 and #E-410 against Defendants Mims and McComas, (2) violation of the First Amendment based on an as-applied challenge to FCJ Policy #E-120 and #E-410 against Enriquez, Keoniyom and Nichols, and (3) for violation of Due Process against officers who returned Plaintiff's mail, Enriquez, Keoniyom and Nichols. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a District Judge to this action.

Furthermore, IT IS HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's first amended complaint, filed on December 13,

2022 (ECF No. 10) ), for: (1) violation of the First Amendment based on a facial challenge to FCJ Policy #E-120 and #E-410 against Defendants Margaret Mims (outgoing Sheriff) and Steve McComas (Assistant Sheriff), (2) violation of the First Amendment based on an as-applied challenge to FCJ Policy #E-120 and #E-410 against Enriquez (Correctional Officer), Keoniyom (Correctional Officer), and Nichols (Mailroom Sergeant), and (3) for violation of Due Process against officers who returned Plaintiff's mail, Enriquez, Keoniyom and Nichols; and

2. All other claims be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 30, 2022**          /s/ Barbara A. McAuliffe
                                      UNITED STATES MAGISTRATE JUDGE