1
2
3
4
5

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM DRAKE, | Case No.  1:22-cv-01149-JLT-BAM (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS |
| IBAL, *et al.*, | (ECF No. 37) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Sam Drake ("Plaintiff") is a pretrial detainee proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  The Court screened Plaintiff's complaint, and he was granted leave to amend. The Court screened Plaintiff's first amended complaint which stated cognizable claims.  Following Plaintiff's motion to amend, and granting of that motion, Plaintiff's second amended complaint, filed November 2, 2023 is currently before the Court for screening.  (ECF No. 37.)

## I.      Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the

1

pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.,* 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.    Plaintiff's Allegations

Plaintiff is currently housed at Fresno County Jail. The events in the complaint are alleged to have occurred while Plaintiff was housed as a pretrial detainee in Fresno County Jail ("FCJ"). Plaintiff names as defendants: (1) Steve McComas, Assistant Sheriff, (2) Margaret Mims, Former Sheriff, (3) John Zanoni, current Sheriff, (4) A. Snyder, mailroom office assistant, (5) Mary Nichols, Correctional Sergeant,[1] (6) Patrica Enriquez, correctional officer, and (7) Michael Keoniyom, correctional officer. All defendants are sued in their individual capacities.

In claim 1, Plaintiff alleges a violation of free speech and right of access to information by Defendants Mims, McComas, and Zanoni for implementing a facially unconstitutional jail mail policy in violation of the First Amendment.  Claim 1 involves an overbreadth challenge to FCJ Policy #E-120.  At all times between 2019 and 2023, Plaintiff had a vested First Amendment right to free speech and expression and access to information. Plaintiff alleges that Defendants

---

[1] The second amended complaint names "Mary Nichols" as a defendant.  However, the first amended complaint named "S. Nicols" as a defendant.  (ECF No. 10, p.2.) Both "S. Nichols," in the first amended complaint, and "Mary Nicols," in the second amended complaint, are identified as a "Correctional Sergeant" with responsibilities for the FCJ mailroom  *Id.,* ECF No. 37, p. 2. The Court expresses no opinion as to whether S. Nicols is the same person as Mary Nicols.

Mims, McComas, Keoniyom, Enriquez, and Nichols deprived Plaintiff of his rights, from March 2019 through March 4, 2021 (first time period) and from March 28, 2022 through November 30, 2022 (second time period).  Defendants Snyder, Zanoni, Keoniyom deprived Plaintiff of his rights from February 2023 through August 2023 (third time period). Plaintiff alleges that the "continuing violation doctrine" applies for the entire time he has been detained at FCJ. FCJ Policy #E-120 is the moving force of ongoing and continuing deprivation of Plaintiff's First and Fourteenth Amendment. Policy #E-120 is facially unconstitutional and overbroad in denying Plaintiff's liberty interest in acquiring and enjoying erotic (non-obscene) non-sexually explicit publications.  Policy #E-120 was revised by Defendant Mims in 2021, and by Defendant Zanoni in February 2023.  The policy restricts possession of non-nude publications where no sexual activity is depicted solely based on clothing or pose displayed and directs or authorizes staff to disallow access to such materials and restricts sex education books.

Policy #E-120 sets forth at p. 14, §x, includes Policy #E-410 (mirroring)[2] provision set forth at pages 20-21 and comprises the "sexy content ban" which repudiates Plaintiff's right to free speech, free expression, and access to information. Policy #E-120 restricts/inhibits Plaintiff's access to read, possess, purchase any erotic artwork, photos, books, catalogs, magazines that can be said to be too sexy or revealing or indecent by the personal prejudice or bias or whim of an staff person who screens Plaintiff's mail for contraband. Policy #E-120 is overly broad and does not advance any legitimate detention goals.

Defendant Mims from 2019-2022 was the policy maker having final authority to establish all FCJ policies and established Policy #E-120, adding language to enlarge the scope of the *Miller v. California* obscenity test.  Mims expanded the definitions of "obscenity" and "sexually explicit material" to create her own bans ("Sexy Content Ban"). Policy #E-120 lists Penal Code §§311, 2600, 2601 and *Procunier v. Martinez* as authority.  Mims' 2021 revisions of Policy #E-120 incorporated verbatim PC §311 obscenity test and definitions as well as CDCR state regulation

---

[2] Plaintiff also claims a violation by FCJ Policy #E-410, which Plaintiff alleges is the mirror image of FCJ Policy #E-120.  (Doc. 37, ¶10.)  As the mirror image of FCJ Policy #E-120, any cognizable claim will apply equally to #E-410.

§3006(c)(15)(17) of "frontal nudity ban" provisions.

Defendant Zanoni, in 2023, was the policy maker having final authority to establish all FCJ policy and continued implementing Policy #E-120. At his February 9, 2023 revision of Policy #E-120, Zanoni had no substantive changes and refused to remove the broad restrictive provisions.

In 2021-2023, Mc Comas was responsible for implementation the jail policy and enforcement procedures.

At no time did Mims, McComas, or Zanoni have authority to implement Policy #E-120 to enlarge, alter, or supersede the governing obscenity laws.  Mims, McComas, Nichols, and Zanoni had a routine practice of depriving Plaintiff of the right to free speech, expression, and access to information.  Plaintiff had Fourteenth Amendment protection and right to buy, possess, view, read non-nude/non-obscene publications.  Policy #E-120 restricts purchase, possession, reading of nonnude/side-rear nude/sex-based publications and is excessive in relation to FCJ management and security needs. Plaintiff's purchase, possession or reading erotic art, photos, magazine, books, catalogs does not pose a threat to FCJ security or safety.

Mims, McComas, and Zanoni intended to harm Plaintiff in 2019 through 2023 by implementing the county jail contraband policy, Policy #E-120, restricting more than state prison mail policies.  In 2019-2023, Mims, McComas, and Zanoni had access to state regulations, Title 15 Code of Regulations, and knew that prison contraband and mail policies expressly followed the obscenity test and definitions of "obscenity" and "sexually explicit." In 2019 through 2023, Mims, McComas, and Zanoni knew that the FCJ Policy #E-120 was more restrictive than prison polices and conflicted with *Miller* and PC §311.  Reasonable jail officials would know that implementing jail mail policy which conflicted with and enlarged the scope of obscenity law was unlawful and abuse of their rulemaking discretion.

In 2019 through 2023, *Miller,* PC §311, 15 CCR §3006(c) were the established laws governing obscene/sexually explicit material. None of the laws support Policy #E-120. The governing definition of obscenity and sexually explicit are derived from 18 U.S.C. §1461. The legislature has not given FCJ defendants authority to define obscene or sexually explicit more

broader than, *Miller,* PC §311, 15 CCR §3006(c), 18 U.S.C. §1461.

Defendant Mims, McComas, and Zanoni acted with conscious indifference to Plaintiff's suffering mental trauma when each of them failed and refused to remove the overly broad and restrictive Policy #E-120. Concerns for jail safety, security, good order in FCJ are no greater that such concerns in prisons. Policy #E-120 is an exaggerated response to FCJ security, safety and facility management concerns. Policy #E-120, section x, paragraph C states:[3]

"C. Nude or sexually suggestive photographs (individual prints or copies, as opposed to those from publications) present special concerns about personal safety, security, and good order, particularly when the subject is an inmate's relative, friend, or acquaintance or could reasonable be perceived as such. For these reasons, an inmate may not be permitted to retain, receive, or possess a personal photograph in which the subject is partially nude or naked, overtly sexual or sexually suggestive. Persons must be clothed in a manner that would be generally accepted in the community as a whole. Any intent to show nudity, including, but not limited to the following, will be returned as unacceptable:

1. Any photograph that displays an exposed female breast. This includes photos that have been altered to obscure or conceal the areola (e.g., strategically places stickers, digitally altered, etc.) Undergarments must be worn beneath clothing that is sheer/translucent, lace, mesh, etc.
2. Any photo that displays the genitalia, pubic area, or anus of either gender (including those waring clothing that by design or by manner in which it is worn, allows the anatomical detail of genitalia to be clearly viewed).
3. Any nude photographs of infants or children.

Plaintiff contends the restriction are overly broad in that it covers innocuous nonnude, non-sexually explicit materials and bears no relation to FCJ's legitimate penological objective.

In 2019 through 2023, Defendant Mims, McComas, and Zanoni maintained that the Policy #E-120 supersedes definitions taken from 18 U.S.C. §1461 and its progeny and Title 15, CCR ¶3006 and is "window dressing."

Defendant Mims and McComas created an unofficial rejection criteria list ("URCL") that mailroom staff used when generating rejection notices under Policy #E-120. The URCL does not

---

[3] The Court has copied the contents of Policy #E-120, paragraph C from its prior screening order. (ECF No. 13, p. 9.) The Court had previously taken judicial notice of Policy #E-120. *Id.* at pp.6-7.

appear in the Policy #E-120, but lists a multitude of superfluous rejection reasons. The URCL created by Mims, McComas, and Zanoni is not accessible to Plaintiff.  It has superfluous reasons such as "book is sex based," "photo is sexually suggestive," "genitalia/labia can be seen due to the attire," "the areola can be seen through her thin lace attire."  Mims, McComas, and Zanoni view all erotic art, photographs, and literature as obscene or pornographic and treat nonnude sexy/erotic publications as pornography.  The photos Plaintiff ordered are not obscene or sexually explicate and are not excludable as contraband.

Plaintiff only ordered nonnude/partly nude (profile) photos, magazines, catalogs and never order any publication depicting patently offensive sexual activity, frontal nudity or which had no artistic/literary value.  These materials should not fall within Policy #E-120.

Policy #E-120 contains a blanket disposal provision p. 4, section II which states "when contraband or other prohibited content is found, which is not otherwise illegal, the entire contents will be returned to the sender." This section cross references to Sections IX-prohibited materials, X-sexually explicit and obscene materials, and XI-threatening or dangerous materials.

Mims, McComas, and Zanoni's Policy #E-120's blanket disposal provision is unreasonable and overly restrictive because it facilitates disposal of the entire issues of magazines, photos etc.  They had available an alternative to the blanket disposal to allow delivery of allowable items contained in a mixed parcel of publication.

In 2019-2023, one on one contact/interaction with opposite gender is not permitted at FCJ. Plaintiff is an artist and author.  Plaintiff required pictorial images to inform his artwork and as well as to re-channel and release sexual energy in a healthy way because he cannot have one on one interaction with women.  Plaintiff does not purchase pornography.

The direct effect of Policy #E-120 is theft of photos and magazines, increased altercations and sexual abuse, increased sexual aggression toward female staff, mental trauma, and a black market for sexy nonnude materials. FCJ did not have a high incident of facility disruption or sexual harassment that could be linked to detainees retention of nonnude or partly nude publications.  There is no measurable decree in disruptive behavior since Policy #E-120 was established.

6

Plaintiff has been harmed in the following ways.  Plaintiff has been injured and suffered mental trauma, oppression, poverty of affection, anxiety, loneliness, anguish, stigma as a result of Mims, McComas, and Zanoni's Policy #E-120.

In claim 2, Plaintiff alleges violation of the First Amendment for an as applied challenge to Policy #E-120.  From March 2019 to August 2023, Nichols, Enriquez, Keoniyom, and Snyder applied Policy #E-120 to "incoming mail" screening provision, repeatedly apply the "sexy content ban" and the "blanket disposal" restriction to Plaintiff's mail. From March 2019 to August 2023, Nichols, Enriquez, Keoniyom, and Snyder rejected Plaintiff's incoming mail publications, including photos, magazines, catalogs, books, order forms.  Rejection was not rationally related to facility management, security, safety and were exaggerated responses to those concerns.  Implementing Policy #E-120 was unlawful. From March 2019 to August 2023, Nichols, Enriquez, Keoniyom, and Snyder knew the governing obscenity laws were 18 U.S.C. §1461, *Miller v. California*, PC §311, and 15 CCR §3006. From March 2019 to August 2023, Nichols, Enriquez, Keoniyom, and Snyder rejected material for arbitrary reasons and for not applying the applicable laws.

Defendant Nicols violated Plaintiff's First Amendment rights four separate times.  She applied the Policy #E-120, did not apply the obscenity test, did not apply the correct definition, and censored Plaintiff's photos as obscene, sexually explicit and denied Plaintiff access to nonnude photos and magazines in December 2019, March 8, 2020, May 11, 202 and March 30, 2020.  On May 4-5, 2022, Defendant Nicols disposed of Plaintiff's catalog evidence showing that the April 2022 censoring by Keniyom was done illegally.

Defendant Enriquez violated Plaintiff's First Amendment rights four separate times when she applied the Policy #E-120 to Plaintiff's materials on February 27, 2020, March 5, 2020, May 11, 2020, and March 28-30, 2022.  She censored Plaintiff's materials and did not log the catalogs.

Defendant Snyder violated Plaintiff's First Amendment rights once and censored a book Plaintiff had ordered.

Defendant Keoniyom violated Plaintiff's First Amendment rights three times when he censored Plaintiff's materials under the Policy #E-120.  He censored each mailing as prohibited

contraband and did not log the materials of the first two mailings and denied access to the entire contents. Defendant Keoniyom has stopped Plaintiff from ordering any and all books, catalogs, magazines and has only allowed Plaintiff to receive a nonnude catalog which has every image scribbled out.

Plaintiff's injuries are loss of monies, oppression, humiliation, stigma, increased emotions distress for censoring and confiscating Plaintiff's mail from 2019-2023.

In claim 3, Plaintiff alleges deprivation of fundamental right to fair warning by FCJ Defendants Enriquez, Nicols, Snyder, and Keoniyom for returning Plaintiff's mail without notice of the violation of the Fourteenth Amendment due process.  Plaintiff had the right to receive notice that his incoming mail was being withheld by jail officials.  Defendant Nichols, Enriquez, Keoniyom, and Snyder caused Plaintiff to be deprived of fair notice prior to deprivation of his mail, from 2019 though 2023.  During this time Nichols, Enriquez, Keoniyom, and Snyder did not provide Plaintiff with minimum procedural safeguards for the decisions to censor and withhold delivery of Plaintiff's mail.  They did not give Plaintiff written notice that the publications were seized, did not give Plaintiff an opportunity to object, and they withheld material until after they each disposed of Plaintiff's mail on 12 separate dates.

Under Policy #E-120, Defendant Nichols censored, seized and immediately returned to senders Plaintiff's nonnude photos, magazines, catalogs four times – December 2019, March 8, 2020, May 11, 2020, and March 30, 2020.  Defendant Enriquez did the same on February 27, 2020, March 5, 2020, May 11, 2020, and March 28-30, 2022.  Defendant Keoniyou also did the same on April 19, 2022, April 28, 2022, and June 1, 2023.  Defendant Snyder did the same on May 3 and 4, 2023.  Each was an unnoticed disposal of Plaintiff's property.

Plaintiff was prejudiced by Nichols, Enriquez, Snyder, and Keoniyom's absent notices, and Plaintiff suffered injuries of loss of business rapport with vendors, estrangement from family, loss of monies, and oppression.  There was no penological interest in disposing of Plaintiff's nonnude, non-obscene, non-sexually explicate photos, magazines, catalogs, book and forms.  Had Plaintiff been informed predisposal, Plaintiff would have protested, and they should have given him written notice and an opportunity to protest and recover the property.

In 2019-2023, the practice by the FCJ mailroom defendants was to censor mail based on personal value judgments, seize and dispose of the mail, then issue an after the fact notice.

As remedies, Plaintiff seeks compensatory and punitive damages and declaratory relief declaring Policy #E-120 unconstitutional as it is overbroad, and seeks other relief as ordered by the Court.

### III.    Discussion

### A.    First Amendment – Challenge to Jail Mail Policy

Prisoners have "'a First Amendment right to send and receive mail,' but prison regulations may curtail that right if the 'regulations are reasonably related to legitimate penological interests.'" *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017) (quoting *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam)). However, a temporary delay or isolated incident of delay or other mail interference without evidence of improper motive does not violate a prisoner's First Amendment rights. *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (as amended); *see Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *Watkins v. Curry*, 2011 WL 5079532, at *4 (N.D. Cal. Oct. 25, 2011) (finding that an isolated incident of mail mishandling, without evidence that the delay was based on the content of the letter or that the one-year delay was purposeful, fails to show First Amendment violation); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners.").

When considering prison regulations on incoming publications, "[s]ome content regulation is permissible in the prison context." *McCabe v. Arave*, 827 F.2d 634, 638 (9th Cir. 1987); *see Beard v. Banks*, 548 U.S. 521, 531-32 (2006) (analyzing prison inmate's challenge to a state Department of Corrections policy restricting access to newspapers, magazines, and photographs under the *Turner* factors). Prison officials do not need to show that there is no less restrictive mail policy that could serve the same penological interests. *See Thornburgh v. Abbott*, 490 U.S. 401, 412 (1989). This right is subject to "substantial limitations and restrictions in order

9

to allow prison officials to achieve legitimate correctional goals and maintain institutional security." *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir.1990) (citations omitted). Courts owe "substantial deference to the professional judgment of prison administrators." *Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003). In order for the policy to be upheld, it must be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. at 89, 107 S.Ct. 2254. In *Turner*, the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89.

There are four factors relevant to the *Turner* reasonableness inquiry: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

Plaintiff challenges FCJ Policy #E-120.[4] In relevant part, the policy states the following regarding sexually explicit or obscene material (Doc. 13, pp.9-10):[5]

"C. Nude or sexually suggestive photographs (individual prints or copies, as opposed to those from publications) present special concerns about personal safety, security, and good order, particularly when the subject is an inmate's relative, friend, or acquaintance or could reasonable be perceived as such.  For these reasons, an inmate may not be permitted to retain, receive, or possess a personal photograph in which the subject is partially nude or naked, overtly sexual or sexually suggestive.  Persons must be clothed in a manner that would be generally accepted in the community as a whole.  Any intent to show nudity, including, but not limited to the following, will be returned as unacceptable:

4. Any photograph that displays an exposed female breast.  This includes photos that have been altered to obscure or conceal the areola (e.g., strategically places stickers, digitally altered, etc.) Undergarments must be work beneath clothing that is sheer/translucent, lace, mesh, etc.
5. Any photo that displays the genitalia, pubic area, or anus of either gender (including those waring clothing that by design or by manner in which it is worn, allows the anatomical detail of genitalia to be clearly

---

[4] See footnote 2.
[5] The Court had previously taken judicial notice of Policy #E-120. (ECF No. 13, p. 9.)

viewed).

6.   Any nude photographs of infants or children.

The purpose of this policy is stated as:

"In order to prevent a discriminatory and hostile work environment and reduce sexual harassment for inmates, staff, and volunteers, inmates are not permitted to send, receive, possess, or have under their control obscene material and/or mail containing information concerning where, how, or from whom obscene material may be obtained."

*Id.*

Plaintiff alleges that the material seized was non-nude, nosexual photos depicted in publications and other non-sexual photos and magazines.  Plaintiff argues the FCJ Policy #E-120 applies to common depictions of ordinary and lawful activities, and that these depictions constitute photographs and catalogs subject to the policy.

1.   Facial Challenge

A constitutional challenge to a policy is "'facial' [if] it is not limited to plaintiff['s] particular case, but challenges application of the law more broadly. . . ." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (facial challenges "reach beyond the particular circumstances of these plaintiffs.")  Facial challenges are disfavored.  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).  "A facial challenge to a [policy] is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [policy] would be valid.  The fact that the [policy] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid[.]"  *United States v. Salerno*, 481 U.S. 739, 745 (1987).

In the First Amendment context, however, the Court has "recognize[d] 'a second type of facial challenge,' whereby a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to [its] plainly legitimate sweep.' " *United States v. Stevens,* 559 U.S. 460, 473, 130 S.Ct. 1577 (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008)). When a plaintiff presents such a facial challenge to a prison regulation, Courts evaluate it

using the *Turner* framework, just as it would if the challenge were to a specific application of the regulation. *Bahrampour v. Lampert*, 356 F.3d 975 (9th Cir.2004) (upholding refusal to deliver depictions of actual or simulated sexual acts).

Before the Court can apply the *Turner* factors, it must construe the challenged policy. *See United States v. Williams*, 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) ("[I]t is impossible to determine whether a statute reaches too far without first knowing what the statute covers.") (*citing United States v. Williams*, 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008)).

The Court's interpretation of FCJ Policy #E-120 should be informed by the parties' arguments regarding the terminology in the policy. *See Prison Legal News v. Ryan*, 39 F.4th 1121, 1130-32 (9th Cir. 2022) (evaluating each parties arguments regarding the meaning of the challenged language). In addition, at screening, the Court should not unilaterally apply the *Turner* factors. For instance, the Court cannot determine, at this point, whether the policy is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Plaintiff alleges that the safety and security concerns were a mere pretext. *See Prison Legal News,* 39 F.4th at 1133 (finding that provision prohibiting publications in an Arizona jail facility "that may, could reasonably be anticipated to, could reasonably result in, is or appears to be intended to cause or encourage sexual excitement or arousal or hostile behaviors, or that depicts sexually suggestive settings, poses or attire" was not rationally related to prohibiting the threat to "prison interests"). As the Court cannot interpret FCJ Policy #E-120 or apply the *Turner* factors, the Court finds that Plaintiff states a cognizable claim for violation of the First Amendment for FCJ Policy #E-120 against the Defendants Plaintiff alleges created or maintained Policy #E-120: Defendants Mims, McComas, and Zanoni.

2.     As-Applied Challenge

" '[A] [policy] ... may be held constitutionally invalid as applied when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question.' " *Little v. Streater*, 452 U.S. 1, 16 (1981) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). Thus, to support an "as applied"

challenge, Plaintiff must show that his individual circumstances make the general application of the FCJ Policy #E-120 policy unconstitutional. *See Doe v. United States*, 419 F.3d 1058, 1063 (9th Cir. 2005). As-applied challenges are also subject to the *Turner* framework.  *Prison Legal News v. Ryan*, 39 F.4th at 1135.

Accepting Plaintiff's factual allegations as true, liberally construing the allegations, and also drawing all inferences therefrom in Plaintiff's favor, as the Court must at this stage, Plaintiff states a cognizable claim that the confiscation of his magazines, catalogs, and photographs, violated the First Amendment. At the screening stage, the Court cannot ascertain the balancing required for the *Turner* factors. Here, jail officials allegedly returned/banned entire issues of magazines and catalogs because they contained photographs of non-nude people, non-sexual photos and in "suggestive" poses. If true, such a ban could extend to virtually any magazine or newspaper simply because of a single advertisement for swim wear, for example. Plaintiff alleges that each of Defendants Enriquez, Nichols, Keoniyom, and Snyder censored/returned Plaintiff's materials. Plaintiff states a cognizable as-applied claim against Defendant Enriquez, Nichols, Keoniyom, and Snyder.

**B. Due Process - Failure to Provide Notice**

A prisoner also has a Fourteenth Amendment due process liberty interest in receiving notice that his incoming mail has been withheld by prison authorities. *Frost v. Symington*, 197 F.3d 348, 353 (9th Cir. 1999). Nevertheless, prisons may regulate the processing of inmate mail so long as those regulations further an important or substantial government interest other than the suppression of expression. *See Procunier v. Martinez*, 416 U.S. 396, 411-12 (1974), overruled on other grounds, *Thornburgh v. Abbott*, 490 U.S. 401, 412-414 (1989); *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002) (jail personnel may regulate speech if a restriction is reasonably related to legitimate penological interests and an inmate is not deprived of all means of expression, citing *Turner v. Safley*, 482 U.S. 78, 92 (1986)). Thus, prisons may regulate the processing of inmate mail so long as those regulations further an important or substantial government interest other than the suppression of expression. *See Procunier*, 416 U.S. at 411-12, 413-14. "Prevention of criminal activity and the maintenance of prison security are legitimate

penological interests which justify the regulation of both incoming and outgoing prisoner mail."

In *Procunier*, the Supreme Court held "that the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." 416 U.S. at 417-18. Specifically, an inmate "has a Fourteenth Amendment due process liberty interest in receiving notice that his incoming mail is being withheld by prison authorities*." Frost v. Symington*, 197 F.3d 348, 353-54 (9th Cir. 1999). This liberty interest is protected from "arbitrary government invasion," and any decision to censor or withhold delivery of mail must be accompanied by "minimum procedural safeguards." *Sikorski v. Whorton*, 631 F. Supp. 2d 1327, 1341 (D. Nev. 2009) (quoting *Procunier*, 416 U.S. at 417-18.) The "minimum procedural safeguards" are: (1) notifying the inmate that the mail was seized; (2) allowing the inmate a reasonable opportunity to protest the decision; and (3) referring any complaints to a prison official other than the one who seized the mail. *Procunier*, 416 U.S. at 418-19; *Krug v. Lutz*, 329 F.3d 692, 697-08 (9th Cir. 2003) ("Following *Thornburgh*, this circuit has repeatedly acknowledged that withholding delivery of inmate mail must be accompanied by the minimum procedural safeguards established in [*Procuni*er].").

Plaintiff alleges he was not provided notice that his photographs, catalogs, and magazines were returned to the sender before they were returned.  Liberally construing the allegations, Plaintiff states a cognizable claim for violation of due process against officers who returned mail, Enriquez, Keoniyom, Nichols, and Snyder.

### IV.   Conclusion and Recommendation

Based on the above, the Court finds that Plaintiff's second amended complaint, filed on November 2, 2023 (ECF No. 37), states a cognizable claim for: (1) violation of the First Amendment based on a facial challenge to FCJ Policy #E-120 and #E-410 against Defendants Mims, McComas, and Zanoni, (2) violation of the First Amendment based on an as-applied challenge to FCJ Policy #E-120 and #E-410 against Enriquez, Keoniyom, Nichols, and Snyder, and (3) for violation of Due Process against officers who returned Plaintiff's mail, Enriquez, Keoniyom, Nichols, and Snyder. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies and further leave to amend

is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a District Judge to this action.

Furthermore, IT IS HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's second amended complaint, filed November 2, 2023 (ECF No. 37), for: (1) violation of the First Amendment based on a facial challenge to FCJ Policy #E-120 and #E-410 against Defendants Margaret Mims (outgoing Sheriff), Steve McComas (Assistant Sheriff), and John Zanoni (current Sheriff), (2) violation of the First Amendment based on an as-applied challenge to FCJ Policy #E-120 and #E-410 against Enriquez (Correctional Officer), Keoniyom (Correctional Officer), Mary Nichols (Mailroom Sergeant), Snyder (mailroom office assistant), and (3) for violation of Due Process against officers who returned Plaintiff's mail, Enriquez, Keoniyom, Nichols and Snyder; and

2. All other claims be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 20, 2024**          /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE

15